UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SLIWA, on behalf of himself and all others similarly situated,<br>    Plaintiff,<br><br>    v.<br><br>SEZZLE, INC.,<br>    Defendant. | CV 22-06093 DSF(MAAx)<br><br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND (Dkt. 11) AND GRANTING MOTION TO CONTINUE AND MOTION TO COMPEL DISCOVERY (Dkt. 12), |

    Sezzle, Inc. removed this case on the basis of federal jurisdiction pursuant to the Class Action Fairness Act of 2005 (CAFA). It then moved to compel arbitration. Dkt. 10. Michael Sliwa moved for remand, Dkt. 11 (Mot. re Remand) and filed a separate motion requesting a continuance of the motion to compel arbitration hearing and requesting that this Court compel the deposition of Joshua Bohde, Sezzle's Chief Technology Officer, Dkt. 12 (Mot. re Continuance). Sezzle opposes remand, Dkt. 29 (Opp'n re Remand), and opposes the continuance and compelling of Bohde's deposition, Dkt. 27 (Opp'n re Continuance). Sliwa's motion to remand is DENIED. His motion for continuance and to compel Bohde's deposition is GRANTED.

## I. BACKGROUND

    Sezzle is a service that allows consumers to pay for purchases at a later date. Dkt. 1-2 (Compl.). ¶ 3. It is a "point-of-sale-loan" application. Id. ¶ 16. Sezzle "touts itself as a free service" and allows consumers to pay for purchases in installments with no interest. Id. ¶¶ 17, 21. If, however, a user is unable to pay for an installment,

Sezzle will cancel the account. Users must pay a ten-dollar reactivation fee to make a new purchase. Dkt. 29-1 (Lucas Decl.) ¶ 5. Sezzle warns users that if it is not able to process a payment, a fee will be added to the payment after a grace period. Compl. ¶ 24. Sezzle does not, however, warn that automatic installment charges may result in users incurring overdraft and insufficient funds fees (NSF fees) from their banks. Compl. ¶¶ 25-26. When a payment does not go through, Sezzle will sometimes try to re-process payments, which results in multiple NSF fees for users. Id. ¶ 32. For example, Sliwa made a purchase using Sezzle in December 2021. Over the next month, his bank charged him four separate $34 NSF fees for Sezzle's attempts to collect partial repayments of the purchase. Id. ¶¶ 37-40.

On May 6, 2022, Sliwa filed a putative class action against Sezzle in this Court. Dkt. 1-1. On June 2, the parties met and conferred about Sezzle's intent to file a motion to compel arbitration. Dkt. 10-3 (TOS Ltr.) ¶ 3. After the meet and confer, Sezzle provided Sliwa with a four-page letter describing why the arbitration clause bound him and how users agreed to the terms of service. Id. Attached to the letter was over thirty screenshots of the app illustrating how users signed the Sezzle terms of service. Id. Bohde submitted a declaration in support of the letter and submitted a separate declaration describing how the website and terms of service operated. Dkt. 10-1, 10-2. Sliwa voluntarily dismissed the lawsuit. Sliwa v. Sezzle Inc., No. 2:22-cv-03055-DSF-MAA, Dkt. 14.

On July 21, 2022, Sliwa, individually and on behalf of a class of California consumers, re-filed the complaint in state court. The new complaint alleges that Sezzle violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, and California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. Id. ¶¶ 58-82. The relief demanded includes compensatory damages, restitution, disgorgement, punitive and exemplary damages, pre-judgment interest, and fees and costs. Id. at 13-14. Sezzle removed the action on August 26, 2022.

## II. LEGAL STANDARD

### A.   CAFA Removal

CAFA gives federal courts jurisdiction over class actions involving at least 100 class members, minimal diversity, and at least $5 million in controversy.  28 U.S.C. § 1332(d).  "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court . . . [and] intended CAFA to be interpreted expansively."  Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015).  In a notice of removal, the defendant need only plausibly allege that the prerequisites are met.  Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 89 (2014).  Once confronted with a motion to remand, however, the defendant bears the burden of establishing jurisdiction by a preponderance of the evidence.  Id. at 553-54.  Both "parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal."  Ibarra, 775 F.3d at 1199-1200 (citation omitted).  There is no presumption against removal under CAFA.  Dart Cherokee, 574 U.S. at 89 ("no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").

## III. DISCUSSION

### A.   Remand

Plaintiff moves for remand, arguing that "removal is improper because [Sezzle] has failed to proffer calculations of the actual amount in controversy."  Mot. re Remand at 2.  When Sezzle removed the case, it claimed that the "amount of revenue Defendant generated in late fees from California customers from July 26, 2019 to July 26, 2022 is greater than $5,000,000" and the "total amount of fee revenue Defendant generated from California customers from July 26, 2019 to July 26, 2022 is greater than $5,000,000" and these amounts "individually and together, satisfy CAFA's $5,000,000 amount-in-controversy requirement."  Dkt. 1 at ¶¶ 19, 21-22.

Sezzle has met its burden to show by a preponderance of evidence that the amount in controversy exceeds the CAFA threshold. Sezzle provided a declaration attesting to a search run on all California customers "who linked their Sezzle account to either a bank demand deposit account or debit card" and "misse[d] a payment for more than two days" and then paid a $10 fee to reactivate their account to make another purchase. Lucas Decl. ¶¶ 3-5. During the relevant period, Sezzle made more than the threshold amount from these reactivation fees. This is the income Sezzle received from these consumers. Opp'n re Remand at 4. This evidence alone would be sufficient to support CAFA jurisdiction because Sliwa seeks "restitution of all fees at issue paid to Sezzle by Plaintiff and the Class as a result of the wrongs alleged herein" and Sliwa also seeks "disgorgement of the ill-gotten gains derived by Defendants from its misconduct." Compl. at 13 (emphasis added). Sezzle has provided evidence of the profit and fees it made from California customers whose accounts were automatically charged, but whose payments did not go through.

Sliwa's arguments that this is insufficient are unavailing. Sliwa first insists that he is not seeking damages based on these categories. He claims that he actually seeks an amount equal to the overdraft and NSF fees charged to class members by their banks. Mot. re Remand at 4 ("Plaintiff seeks an entirely different quantum of damages: the amount of NSF and/or OD fees paid to Sezzle users' banks."). But the Complaint clearly contradicts this claim. Sliwa contends "Sezzle has been unjustly enriched and should be required to disgorge its unjust profits and make restitution," Compl. ¶ 75, and the Court should award "restitution of money wrongfully acquired by Defendant by means of said representations," id. ¶ 81. The prayer for relief asks for "restitution of fees at issue paid to Sezzle by Plaintiff and the Class" and for "disgorgement" of Sezzle's profits. Compl. at 13. The fees/income Sezzle received from individuals who were charged fees by their banks is, therefore, relevant to consider when calculating the amount in controversy. Sliwa also argues that including all individuals whose automatic charges to bank or debit cards did not go through improperly assumes a one-hundred percent violation rate. Dkt. 32

4

(Reply re Remand) 4-6.  This is unconvincing.  Sliwa provided no evidence in his briefing that would better clarify the frequency of the violations.  Where a plaintiff provides "no guidance as to the frequency of the alleged violations," a "removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." Thompson v. La Petite Acad., Inc., No. 2:22-cv-04348-AB (JPRx), 2022 WL 5241838, at *5 (C.D. Cal. Oct. 6, 2022) (finding "Defendants have demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5 million"); see also Stanley v. Distribution Alternatives, Inc., No. EDCV 17-2173 AG (KKx), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (finding the amount in controversy met where "Stanley's complaint provides almost no allegations concerning the frequency of the alleged violations, and Stanley provides no competing evidence that would suggest lower violation rates.").

Even if these fees were not the damages Sliwa was seeking, reasonable assumptions support the fact that overdraft or NSF fees paid to banks would likely meet the amount in controversy threshold. Harris v. KM Indus., Inc., 980 F.3d 694, 701 (9th Cir. 2020) ("A defendant may rely on reasonable assumptions to prove that it has met the statutory threshold.").  Sezzle makes the reasonable assumption that automatic installment charges did not process for customers with accounts linked to "bank demand deposit account[s] or debit card[s] (as opposed to a credit card[s])," because of insufficient funds.  Opp'n re Remand at 5-6; see also Compl. ¶ 20 (Sezzle works by "automatically charg[ing] every two weeks") (emphasis added).  Sezzle then infers that customers with cards connected to bank accounts that paid a reactivation fee likely received an insufficient funds charge from their bank.  Opp'n re Remand at 5-6.  According to the Complaint, when a bank does not make a payment, it charges the account holder $28-$39 in overdraft fees or NSF fees.  Compl. ¶¶ 31-32; see also Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993,1001 (CD. Cal. 2002) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true.") (internal quotation marks omitted).  Sezzle calculated the amount in controversy threshold just by including the $10 fees it charged.  But

based on the allegations in the Complaint and Sezzle's inferences, people who paid $10 to reactivate their Sezzle account would have been charged approximately triple that amount by their bank. This does not even consider that Sliwa also alleges Sezzle often tries to re-process payments "causing multiple NSF Fees on the same repayment." Compl. ¶32; see also ¶¶ 39-40 (Mr. Sliwa was charged $34 four times for Sezzle's attempts to process payments).

Sliwa argues that there are no facts about what percentage of banks charge NSF or overdraft fees, so not all of these individuals with insufficient funds would have paid these fees. Reply re Remand at 3. This is another violation rate dispute. Sliwa has provided no information about the frequency of these bank overdraft fees. "A removing defendant must inevitably rely on some assumptions to support removal" and where a "[c]omplaint offer[s] no guidance as to the frequency of the alleged violations," a defendant can "assume a reasonable violation rate." Bryant v. NCR Corp., 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (internal citation marks omitted). Sezzle's reasonable inferences support that the amount in controversy is met.

The Court DENIES Sliwa's motion to remand.

## B. Arbitration

Sliwa did not oppose Sezzle's motion to compel arbitration, dkt. 28, but he did move to continue the hearing on the motion until a date after the Court resolved the jurisdictional issue. Mot. re Continuance. Nevertheless, the Court will allow Sliwa to file an opposition. The parties are to advise the Court when the Bohde deposition has been taken. An opposition must be filed no later than two weeks after that date. If Sliwa fails to file a timely opposition, the Court will deem the lack of opposition to be consent to the motion.

## C. Bohde Deposition

In moving for a continuance, Sliwa asked the Court to compel Bohde's deposition. Sliwa alleges that there are factual gaps in Bohde's declaration that go to whether Sliwa agreed to arbitration. Dkt. 31

6

(Reply re Continuance) at 4 ("Mr. Bohde further fails to describe what would happen if a user were to click 'Sezzle User Agreement' (on the website) or 'Terms of Use' (on the mobile application) or 'Sezzle terms' (on the merchant website). Why are the three links all titled differently? Would clicking on any of the links open a separate webpage, or a pop-up within the webpage or mobile application?").

"The FAA provides for discovery . . . if 'the making of the arbitration agreement . . . be in issue.' 9 U.S.C. § 4." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 726 (9th Cir. 1999). The Court grants Sliwa's motion to compel Bohde's deposition. Sliwa may depose Bohde about his declaration, as this goes to the heart of whether an agreement was made. See In re Intuit Free File Litig., No. 19-CV-02546-CRB (SK), 2019 WL 7286933, at *2 (N.D. Cal. Dec. 6, 2019) ("Sun submitted a declaration in support of Intuit's motion to compel arbitration, and, at a minimum, Plaintiffs are entitled to depose Sun on the issues raised in the declaration.").

### D. Sliwa's Local Rule Violations

Sliwa's complete disregard for the Local Rules is unacceptable. Local Rule 7-3 requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. The conference shall take place at least seven (7) days prior to the filing of the motion." If no resolution is reached, the notice for the motion must contain a statement certifying that the Local Rule 7-3 conference took place. Sliwa filed two motions and neither complied with this rule. Sliwa's motion for remand contains no representation that the conference occurred and Sezzle informs the Court that no conference took place. See Mot. re Remand; Opp'n re Remand at 7; Dkt. 13-7. And while Sliwa claimed that a Local Rule 7-3 conference took place with regard to the continuance motion, by his own admission this meet and confer occurred "via email." Mot. re Continuance at 3. Sezzle elaborates that the extent of this "meet and confer" was "an email reciting Plaintiff's position" and when "Defendant's counsel responded with a compromise and a request for a

7

further discussion, Plaintiff's counsel responded that they would file the Motion." Opp'n re Continuance at 6. This is not the thorough discussion required by Local Rule 7-3. "The purpose of Local Rule 7-3 is to help parties reach a resolution which eliminates the necessity for a hearing," which in turn "further[s] judicial economy and the administration of justice." James R. Glidewell Dental Ceramics, Inc. v. Phila. Indem. Ins. Co., No. 8:16-cv-01155-JLS-E, 2016 U.S. Dist. LEXIS 189416, at *1 (C.D. Cal. Sept. 12, 2016) (internal quotation marks omitted). Courts in this district can, and often do, denied motions for disregarding the rule. See, e.g., Travelers Indem Co. of Conn. v. SR Constr, Inc., No. 2:21-cv-06299-MCS-AGR, 2022 U.S. Dist. LEXIS 129008, *3-4 (C.D. Cal. June 17, 2022) ("Accordingly, Plaintiffs have not complied with the letter and spirit of Local Rule 7-3. The Court denies the renewed motion for summary judgment on this basis."); Peet v. Armstrong Int'l, Inc., No, 22-cv-06672-MCS-MAR, 2022 U.S. Dist. LEXIS 189517, *4 (C.D. Cal. Oct. 17, 2022) (similar); In re Copeland IT US Bank Nat'l Ass'n, No. 2:22-cv-00275-MCS-MAA, 2022 U.S. Dist. LEXIS 135653 (June 15, 2022) (similar); Great Am. Ins. Co. v. Ramsey Asphalt Constr Corp., No. 2:21-cv-09071-MCS-AFM, 2022 U.S. Dist. LEXIS 138200, *3 (C.D. Cal. June 1, 2022) (similar). Sliwa has violated the letter and the spirit of Local Rule 7-3.

 Sliwa's procedural violations do not end there. In addition to failing to meet and confer, Sliwa missed three filing deadlines. Local Rule 7-10 requires that reply papers be filed no "later than fourteen (14) days before the date designated for the hearing of the motion." The hearing for all three motions was originally set for October 21, 2022. On October 7, 2022, the Court changed the hearing to October 24, 2022. Dkt. 24. Sliwa's replies regarding continuance and remand were both filed on October 17th. Both replies should have been filed on October 10. Further, Local Rule 7-9 requires that parties file opposition papers no "later than twenty-one (21) days before the date designated for the hearing of the motion." Sliwa should have filed an opposition to the motion to compel arbitration by September 30 (original hearing date) or, at very least, by October 3, 2022 (new hearing date). No opposition

8

was ever filed. It appears that Sliwa unilaterally decided that his motion for continuance was granted.

The Court has – for these motions – looked past these repeated failures in order to address the merits of the issues and move the case along. But it will not do so in the future. Moreover, the conduct of Sliwa's counsel thus far causes the Court to have grave doubts about the adequacy of counsel to represent a class. At the very least, the Court is likely to find any future failures to comply with the Local Rules to be willfully disobedient and such failures will result in sanctions pursuant to Local Rule 83-7.

## IV. CONCLUSION

Sliwa's motion to remand is DENIED. His motion for continuance and to compel Bohde's deposition is GRANTED.

IT IS SO ORDERED.

Date: November 7, 2022      *Dale S. Fischer*

                                        Dale S. Fischer
                                        United States District Judge